UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 3:19-cr-00082-JD |
| ) | |
| JONATHAN E. ROBERTS ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America by Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, through John M. Maciejczyk, Assistant United States Attorney, and submits the following memorandum in preparation for the sentencing hearing in this case.

1.  On October 1, 2019, the defendant pled guilty to the sole count of the Information, charging him with Possession of child Pornography, with Forfeiture Allegation, in violation of 18 U.S.C. §2252(a)(4)(B).

2.  The Final Presentence Report ("PSR"), is dated January 9, 2020. R. 17.  Neither party objected to the final report.  R. 18.

3.  The PSR calculates a guideline range for this defendant of 78 to 97 months.  PSR ¶ 71.  The fine range is from $25,000 to $250,000. PSR ¶ 79. The PSR reports that the defendant does have the ability to pay a fine,   PSR ¶ 69.  He is subject to the Justice for Victims of Trafficking Act of 2015 ("JVTA"), which imposes a mandatory $5,000 fine on any non-indigent person convicted

of this type of offense. PSR ¶ 78. He is required to pay a $100 mandatory special assessment. *Id.* Supervised release upon completion of the sentence of confinement is from 5 years to life. ¶ 74.

4. Restitution is mandatory. ¶ 82. The government has filed a separate restitution request for awards of $5,000 each for four victims under seal to protect the identity of the victims.

5. Although in the plea, the government agreed that "the United States Attorney shall recommend that I be sentenced to a period of imprisonment at the bottom of the applicable guideline range, said guideline range to be determined by the Court." Plea ¶ 9(c). As detailed below, the government recommends a sentence of 78 months, to be followed by 5 years supervised release, no fine, restitution as determined by the court, no JVTA fine, and a $100 special assessment.

6. The United States Sentencing Commission Sourcebook for 2018 states that in 2018, a total of 1,416 child pornography offenders were sentenced. 2018 Sourcebook, Table 27A. The mean sentence for these offenders was 104 months, and the median (average) sentence was 87 months. *Id.* Table 13. Of these, 28.5% received in-range sentences and .9% received above guideline sentences. The remaining 70.9% received below guideline sentences. Of the below guideline sentences, the mean percent decrease was

2

40.1 % decrease and median was 38.1%.

7. Attachment A is a table which shows the mean and median sentences for all child pornography offenders, the percentages of above, within, and below range sentences, and the median sentence and months decrease from 2008 to 2018. The table shows that about a third of sentences are within the guideline range, and two thirds below. However, the mean and median for all sentences have actually increased since 2008.

8. Unfortunately, these statistics do not have an overall average sentencing comparison to the guideline range for above, within, and below range sentences. With approximately 1/3 of offenders receiving in range sentences, and 2/3 of offenders receiving reduced sentences, without a statistician, the government can only estimate loosely that the typical child pornography offender receives a sentence between 20 to 30 percent below the guideline range currently. However, these statistics also do not break the sentences down by offense of production, distribution, receipt and possession. Presumably, the guideline sentences which constitute 1/3 of child pornography sentences would be assessed in the more serious cases involving production and distribution, and the below guideline sentences would be generally assessed in receipt and possession cases.

9. A sentence that is 25% below the bottom of the guideline in this case would result in a sentence of 58 months.

## 18 U.S.C. § 3553(a) Factors

Factors to be considered include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> (5) any pertinent policy statement—
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Of these factors, the most pertinent appear to be the following:

- As pointed out by the PSR, one aspect of the defendant's conduct is aggravating: *"two aggravating factors may be the length of time the defendant was accumulating child pornography and the amount of*

4

*pornography collected as the defendant's collection included lengthy videos whose conversion into images far exceeds the 600 images needed to receive the maximum enhancement pursuant to U.S.S.G. ' 2G2.2(b)(7).*" PSR, ¶ 86. Another possible aggravating factor is that "Between the dates of February 12, 2018 and March 2, 2018, the undercover software connected to IP address 63.39.168.175 approximately sixteen times, with varying results of downloaded data, which includes images and videos of child exploitation." The government could not prove beyond a reasonable doubt whether the defendant knew he was permitting downloads from his files, based on the type of peer to peer file sharing system he was using. The defendant did not agree to speak with the officers at the time of the search warrant, which is obviously his right, but this foreclosed the only other means of determining whether he was aware of downloading.

- With regard to mitigating factors, the PSR notes: "*the defendant is a lifelong resident of the area, was raised by both his parents on a family farm, has worked since his youth, owns his own home and is the president of the family transportation business that services Goodwill Industries. The defendant graduated high school and*

5

> *earned a vocational certificate from Ivy Tech. He voluntarily went into mental health treatment after this case originated and remains in therapy. He has strong family support.*" The government also acknowledges that the defendant pled guilty without the need for the government to obtain an indictment.

- The *need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and to afford adequate deterrence to criminal conduct.* These factors in most cases are served by a guideline sentence, however, as discussed below, child pornography guidelines are unusual in their severity. A sentence <u>below</u> the guidelines would certainly not be out of step with other courts.

- The *need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.* Given the national practice of awarding below guideline sentence in this type of case, a 25% reduction below the guidelines would be consistent with that awarded by other courts.

<u>U.S.S.C. 2012 Report Recommendations</u>

The 2012 U.S.S.C. Report on Federal Child Pornography Offenses, which reviewed and recommended changes to the child pornography guidelines

suggested the following factors be considered in imposing sentences in §2G2.2 cases:

> 1) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology);
> 2) the degree of an offender's engagement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and
> 3) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

Report at 320. Because the defendant was running a peer-to-peer system available to investigators, PSR ¶ 8-9, he "engage[ed] with other offenders." While the defendant's collection contained a significant amount of child pornography involving minors under the age of 12 and sadistic content, there is no indication that he "organized, maintained, and protected his collection over time, including through the use of sophisticated technology." Nor does the government have information that the defendant has a "history of engaging in sexually abusive, exploitative, or predatory conduct" with regard to minors.

## Victim Impact

The government has filed 5 victim impact statements. R. 26. These statements describe in heartbreaking detail the lasting and continuing impact

7

that the circulation of child pornography has on the victims. One of these relates the trauma as a result of the exploitation, not just from the original offense, but from knowledge that others are viewing their images online, as expressed by her mother:

> I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.
>
> My world came crashing down the day I learned that pictures of me being sexually abused had been circulated on the internet. Since then, little has changed except my understanding that the distribution of these pictures grows bigger and bigger by the day and there is nothing I can do about it. The enormity of this has added to my grief and pain, and given me a paranoia. I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them. I feel totally out of control. They are trading around my trauma like treats at a party and it feels like I am being raped all over again by every one of them. It sickens me to the core, terrifies me and makes me want to cry. So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen. I have nightmares about it often. I can never feel safe so long as my images are out there; every time they are downloaded I am exploited again, my privacy is breached, and I feel in danger again. I fear that any of them may try to find me and do something to me.

"Lily" victim impact statement.

A recent article published in the Journal of Child Abuse & Neglect reports on the lasting impact of child pornography in a study of 133 adult survivors. Gerwirtz-Meyden, Walsh, Wolak, Finkelhor, *The Complex Experience of Child Pornography Survivors*, 80 Child Abuse & Neglect 238-248 (April, 2014). The common themes discovered by the study were:

- Feelings of guilt and shame that the images are being circulated;
- Feelings that someone would think that they were willing participants;
- Concern of being recognized in public;
- Concern of being recognized by friends or acquaintances;
- Refusing to be photographed by family or friends;

Id. at 242. Many reported that "they live in constant fear their images will surface and will be viewed by people they know, their family, or their children. Fears of the images and films circulating impacted their ability to continue with their lives or to let go of the past. Many survivors were triggered daily by the fear of being recognized or exposed." *Id.* at 244. Many survivors also felt "haunted" by the circulation of the images:

> Experiencing CP seems to encompass two stages of victimization. One, from a legal point of view, when the abuse is perpetrated and recorded and one from a psychological point of view, implying the ongoing vulnerability of survivors and the unknown aspect regarding the circulation of the images. Participants discussed the life-long vulnerability as a result of the images. According to them, while the

9

> abuse per se ended, the images will forever be out there, and they felt as if they were haunted by them. Even years after the crime, survivors were worried that the images might be seen by other people or family members, that they would be recognized, or that the images would be used by sex offenders for masturbation or to entice other children into abusive situations. For many respondents, the images were a concrete reminder of their victimization that could reveal their past, or be used for criminal purposes without warning to them and outside of their control.

Id. at 246. Other studies also support the conclusions of the Gerwirtz-Meyden study. *See, e.g.*, Canadian Centre for Child Protection (2017). *Survivor's survey*. Retrieved from https://www.protectchildren.ca/pdfs/C3P_ Survivors SurveyExecutiveSummary2017_en.pdf; Martin, J. (2014). *"It's just an image, right?": Practitioners' understanding of child sexual abuse images online and effects on victims*. Child & Youth Services, 35, 96–115, http://dx.doi.org/10.1080/0145935X.2014.924334.

## CONCLUSION

Based on the above, the government requests that the defendant be sentenced to 58 months, no fine, no JVTA assessment under 18 U.S.C. § 3014(a) of $5,000 should be imposed, that he receive 5 years supervised release, and be assessed a $100 special assessment. The government also requests the Court to award restitution for the victims as requested in the government's separate filing.

    Respectfully submitted,

    THOMAS L. KIRSCH II
    UNITED STATES ATTORNEY

BY:   /s/ *John M. Maciejczyk*
    John M. Maciejczyk
    Assistant United States Attorney
    M01 Robert A. Grant Federal Bldg.
    204 S. Main Street
    South Bend, Indiana  46601
    Tel:   (574) 236-8287
    Fax:  (574) 236-8155
    E-mail: John.Maciejczyk@usdoj.gov